### Dunbar and others *v.* Estabrook and others.

(*Circuit Court, D. Massachusetts.* ———, 1880.)

1. Patents Nos. 90,902 and 164,889, for improved cut shoe nails, *held* valid, and infringed by the "cub" nail.

   *Estabrook* v. *Dunbar*, 106 G. 909, explained.

In Equity.

Lowell, C. J. In this motion for a preliminary injunction the recent case of *Dunbar* v. *The Albert Field Tack Com-*

*pany, ante,* 543, has been reargued, as has also that case itself by written briefs, and this opinion will serve for both cases.

In that case I decided that Whidden's patents for improved cut shoe nails, No. 90,902 and No. 164,889, were valid, and were infringed by the nail now before me, called the "cub" nail. The defendants act under the Estabrook patent for an improved screw-peg for shoes, which was decided by Judge Shepley to be valid upon the construction which he gave it, construing the invention somewhat narrowly in order to preserve the patent, but holding that it did not cover the plaintiff's patented cut shoe nails. Estabrook has not confined his manufacture wholly to the nails which he patented, but has made, besides those, one which was an admitted infringement of ·Whidden, and one other which I decided to be so. This he did, hoping that Whidden's patents would be declared void.

Both questions have been reargued: whether the Whidden patents are valid, and whether the "cub" nail infringes them.

A considerable part of the argument and of the affidavits relies on a supposed opinion of Judge Shepley in the case already mentioned, in which the parties were reversed, *(Estabrook v. Dunbar,* 10 O. G. 909, 910;) the defendants fearing that I may have overlooked Judge Shepley's expressions on this subject, and more particularly what he said about the Field nail. He there said that the nail of Whidden (now the plaintiffs' nail) was "scarcely distinguishable, except in form, from the Field nail, so called, and other tapering and corrugated nails which were in common use. So far as the defendants' (now plaintiffs') nail differs in form from nails which were old, it is merely an attempt to improve upon the form of the old corrugated tapering cut shoe nail."

These remarks are said to have guided the defendants in assuming that Whidden had merely "attempted" an improvement on the Field nail, and in acting accordingly.

No one has a higher estimate than I have of the value of Judge Shepley's opinion. Upon such a question of fact, involving mechanics, I consider it much better than my own. But the remark is obvious that in that case he had no occa-

sion to institute a comparison between Whidden's nail and those which preceded it. I do not believe he intended to express anything more than a present impression, if so much. He was deciding the differences between Estabrook and Whidden, and not those between Whidden and Field or Bent. Judge Shepley, I am sure, would have been much surprised to learn that he was supposed, in deciding one case, to have decided a wholly different one. He said, in passing, that the plaintiffs' nail was much like the Field and other nails, as it was; and most particularly it was very much indeed like the Bent nail,—much more than it was like the Field nail. I compared it with the Bent nail for that reason. It is my habit to deal specially with the part of the case which seems to me the most difficult. When I found that the Bent nail was not, on the whole, an anticipation of Whidden, it followed, in my opinion of the relative importance of those two nails to the issue, that the Field nail was no answer to Whidden's patents. Such was and is my opinion. I do not consider that the Field nail, made in brass, would be a successful shoe nail. It differs at both ends from the Whidden, in important particulars. No doubt the differences in all these nails are somewhat minute, and there is difficulty in sustaining any of the patents; but, for the reasons given in the former case, judging the nails by their work, there appears to me to be novelty enough to save the Whidden patents. It was not the Field nail that caused my hesitation.

I likewise continue to think that the cub nail infringes the patents of the plaintiffs. The defendants maintain that the cub is an improvement upon Estabrook, and in a different line of invention, according to Judge Shepley's views, from Whidden's. I do not understand those views exactly as the defendants do. Judge Shepley saved the Estabrook patent, as I understand his decision, by distinguishing his nail from the earlier imported sprig in three particulars, of which two are that Estabrook's patented nail is without a head, and that it has a regular screw thread. He also twice speaks of the Estabrook nail as made of wire. In these three respects Whidden differed from Estabrook, and therefore did not in-

fringe his patent. In the same respects the cub resembles Whidden, and therefore does infringe his patents. The cub nail may be an improvement on both Estabrook and Whidden, for it has the round body of the former, as well as the above-mentioned features of the latter; but its point of departure does not seem to me to be a headless wire screw peg, so much as a cut corrugated nail with a head.

Injunction granted.